UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RUSSELL D. GRADY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:13-cv-00342-TWP-MJD |
| AFFILIATED COMPUTER SERVICES ACS, a Xerox company, | ) ) ) ) |
| Defendant. | ) |

**ENTRY ON MOTION FOR SUMMARY JUDGEMENT**

This matter is before the Court on a Motion for Summary Judgment filed by Defendant Affiliated Computer Services ("Xerox")[1] (Filing No. 42). Plaintiff, Russell D. Grady ("Mr. Grady"), *pro se*, filed this action against Xerox alleging race discrimination, retaliation, and harassment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq.* ("Title VII"). For the reasons set forth below, Xerox's Motion is **GRANTED**.

## I. LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 489-90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).

---

[1] Affiliated Computer Services, LLC legally changed its name to Xerox Business Services, LLC on April 1, 2012.

However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of a claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citation and internal quotations omitted). Finally, "neither the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and internal quotations omitted).

## II. STATEMENT OF MATERIAL FACTS

The following material facts are not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light reasonably most favorable to Mr. Grady as the non-moving party. See *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150 (2000).

Xerox provides business process outsourcing services for commercial and government organizations. During the relevant time period Xerox had a contract with the State of Indiana ("the State") commonly known as the Indiana Eligibility Project ("Project"), in which it provided services to the Indiana Family and Social Services Administration Department. Under the contract, Xerox was responsible for assisting the State in determining the eligibility of Indiana residents for benefits such as food stamps, Temporary Assistance for Needy Families, Medicaid, and Welfare to Work. Xerox conducted interviews of Indiana residents who requested benefits and prepared their files to be reviewed by the State for approval or denial of benefits.

Mr. Grady is Black and his national origin is Hispanic. He is a former employee of Alpha Rae Personnel, Inc. ("Alpha Rae"), an Indiana staffing agency that Xerox contracted with from 2007 through 2012. Alpha Rae was responsible for assigning its employees to Xerox to work on the Project. During Mr. Grady's employment with Alpha Rae, he was assigned to work as an Eligibility Specialist at a Xerox Regional Change Center in Marion County, Indiana. He worked at the Marion County site from September 7, 2010 until April 30, 2012, and was responsible for answering telephone calls from public assistance applicants, completing data gathering interviews, entering the information from the interview into the system, requesting and tracking verification from the applicant, and submitting the case to a State employee who would authorize or deny benefits. The chain of command at the Marion County site was as follows: Strategic Business Unit Manager, Operations Manager, Customer Care Team Lead, and Eligibility Specialist.

In July 2011, Tamara Mason, a State Eligibility Manager, contacted Xerox and requested that Mr. Grady be removed from the Project because he allegedly violated the State's computer usage policy by permitting an applicant to use his computer to access her online bank statement. In August 2011, Xerox received a second report regarding Mr. Grady's performance and a request to have him removed from the Project. A State employee, Timothy Bolton, alleged that Mr. Grady was behind on his work, was discovered sleeping at his desk, and was observed having heated discussions with his girlfriend at the workplace. The Strategic Business Unit Manager for Mr. Grady's team, Ann Noll ("Ms. Noll"), recommended that Mr. Grady be placed on a performance improvement review plan and be issued a final written warning. However, Mr. Grady's disciplinary action was changed to a verbal warning on October 18, 2011, due to an administrative error that occurred in submitting the request to Alpha Rae.

Around March 2012, Mr. Grady was assigned to Team Leader Michelle Akers's ("Ms. Akers") team of Eligibility Specialists. Within a month, Ms. Akers began to make complaints about Mr. Grady's performance to Operations Manager Joe Trice, Jr. ("Mr. Trice"). Mr. Grady's Team Coach, Tiera Burrell ("Ms. Burrell"), made several complaints to Ms. Akers about Mr. Grady's performance, including spending too much time on calls, too much time between calls talking to co-workers and eating, and about him accepting calls from Spanish-speaking callers when protocol required that they be referred to designated Eligibility Specialists. Ms. Burrell also claimed that she observed Mr. Grady sleeping at his desk. On April 5, 2012, Ms. Akers coached Mr. Grady on his performance on two calls, counseling him on his lack of professionalism and failing to input all the required information into the computer system. Mr. Grady's Quality Assurance ratings on the two calls were well below the 85% average required at the time.

On April 26, 2012, an Alpha Rae representative met with Mr. Grady and issued him a final written warning based upon performance complaints received during the month of April. Immediately after receiving the written warning, Mr. Grady returned to his desk, but refused to work on any tasks or take any telephone calls, despite being instructed to do so by Ms. Akers. Mr. Grady was approached twice by Mr. Trice about resuming work on assigned tasks and making himself available for telephone calls.

The following day, a State employee reported that Mr. Grady was found sleeping and using his cell phone while on duty. Ms. Akers contacted another Operations Managers, Ann Brown ("Ms. Brown"), regarding Mr. Grady's conduct. Ms. Akers did not consult with Mr. Trice because he was out of the office on vacation. Ms. Brown consulted with the Strategic Business Unit Manager, Ms. Noll, and they agreed that Mr. Grady should be removed from the Project based upon his past performance and disciplinary history, coupled with the behavior he exhibited after

receiving the written warning on April 26, 2012. Mr. Grady was released from the Project effective April 30, 2012. Although he was discharged from the Project, Mr. Grady remained eligible to receive subsequent assignments through Alpha Rae.

After receiving his final written warning on April 26, 2012, Mr. Grady sent an email to Mr. Trice expressing concerns about Ms. Akers's management of his work. The email complained that Ms. Akers greatly scrutinized his work, that he was being singled out and that her infatuation with him was causing him emotional distress. However, Mr. Trice did not receive the email until after Mr. Grady's discharge due to being out of the office on vacation. Mr. Grady's email never mentioned race or alleged that he was being singled out because of his race. In addition, none of the individuals involved in the decision to remove Mr. Grady from the Project knew about the email prior to his termination and removal from the premises. Additional facts will be addressed below as necessary.

### III. **DISCUSSION**

Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Plaintiffs alleging discrimination under Title VII may prove such discrimination using either the direct or indirect method of proof. *Andonissamy v. Hewlett–Packard Co.*, 547 F.3d 841, 849–50 (7th Cir. 2008). The direct method requires that the plaintiff produce evidence that the defendant was motivated by animus toward a protected class when he suffered some adverse employment action. *Id*. A plaintiff may use direct evidence or a "convincing mosaic" of circumstantial evidence in order to prove discrimination under the direct method. *Coleman v. Donahoe*, 668 F.3d 835, 860 (7th Cir. 2012).

5

If a plaintiff cannot present evidence of discrimination under the direct method, he may pursue his claim using the indirect method. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the indirect method, a *prima facie* case for disparate treatment discrimination requires a showing that: (1) the plaintiff is a member of a protected class; (2) he was meeting the employer's legitimate employment expectations; (3) he suffered an adverse employment action; and (4) was treated less favorably than a "similarly situated" non-protected class member. *Farrell v. Butler Univ.*, 421 F.3d 609, 613 (7th Cir. 2005); *Rodgers v. White*, 657 F.3d 511, 517 (7th Cir. 2011). A plaintiff "cannot defeat a motion for summary judgment simply by raising a genuine issue of fact as to one element of the *prima facie* case. Rather, he must establish all four elements, or create a genuine issue with regard to them[.]" *DeLuca v. Winer Indus., Inc.*, 53 F.3d 793, 798 (7th Cir. 1995).

If the plaintiff establishes a *prima facie* case of discrimination, the burden of production shifts to the defendant to articulate a non-discriminatory reason for the adverse employment action. *Sun v. Bd. of Trs. of the Univ. of Ill.*, 473 F.3d 799, 814 (7th Cir. 2007). If the defendant does so, the burden shifts back to the plaintiff to submit evidence demonstrating that its explanation is pretextual. See *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012). To establish pretext, a plaintiff must "identify such weaknesses, implausibilities, inconsistencies, or contradictions in [defendant's] proffered reasons that a reasonable person could find them unworthy of credence and hence infer that [defendant] did not act for the asserted non-discriminatory reasons." *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 792 (7th Cir. 2007).

**A.     Joint Employer Status**

As a threshold matter, Xerox argues that it cannot be held liable for the alleged discrimination because Mr. Grady was employed by Alpha Rae, not Xerox. Only an "employer"

6

may be held liable under Title VII. *Robinson v. Sappington*, 351 F.3d 317, 332 n.9 (7th Cir. 2003). However, an entity other than the direct employer may be held liable as a "joint employer" where the entity "exerted significant control over the employee." *Whitaker v. Milwaukee Cnty., Wisconsin*, 772 F.3d 802, 810-11 (7th Cir. 2014) (citing *G. Heileman Brewing Co. v. NLRB*, 879 F.2d 1526, 1530 (7th Cir. 1989) (internal quotations omitted)). "Factors to consider in determining joint employer status are (1) supervision of employees' day-to-day activities; (2) authority to hire or fire employees; (3) promulgation of work rules and conditions of employment; (4) issuance of work assignments; and (5) issuance of operating instructions." *Whitaker*, 772 F.3d at 810 (quoting *DiMucci Constr. Co. v. NLRB,* 24 F.3d 949, 952 (7th Cir. 1994)). The alleged employer must exercise control over the working conditions of the employee, although the ultimate determination will vary depending on the specific facts of each case. *Id*.

In the present action, the fact that Mr. Grady was employed directly by Alpha Rae is not dispositive. An employee working for a temporary employment agency may be considered an employee of the entity to which he is assigned for purposes of Title VII where that employer exerts a significant amount of control over the individual. *Piano v. Ameritech/SBC*, No. 02 C 3237, 2003 WL 260337, at *5 (N.D. Ill. Feb. 5, 2003). "Failure to apply the joint employer theory in this context would permit an employer that would otherwise be subject to Title VII's constraints to avoid liability for discrimination while maintaining total control over the work of its employees, merely by hiring them through agencies in a temporary capacity." *Id.*

The facts as presented by Xerox and viewed in light most favorable to Mr. Grady present at least a question of fact as to whether Xerox could be considered Mr. Grady's "employer" for purposes of Title VII. Mr. Grady's supervisors, as well as employees who recommended Mr. Grady's termination, were all employees of Xerox, not Alpha Rae. Ms. Akers, Mr. Grady's direct

7

supervisor and employee of Xerox, had the ability to supervise his day-to-day activities, promulgate work rules and conditions of employment, and issue work assignments and operating instructions. The Operations Manager, the Strategic Business Unit Manager, and the Human Resources Generalist were all Xerox employees, and all had the authority to request Mr. Grady's removal from the Project, *i.e.* to terminate his employment. Thus, the Court cannot say, as a matter of law, that Xerox would not be subject to liability under Title VII due to the amount of control that Xerox had over Mr. Grady's working conditions.

**B.      Mr. Grady fails to satisfy his *prima facie* case**

Despite the Court's conclusion that Xerox could, theoretically, be held liable under Title VII, Mr. Grady has failed to show that there is a question of material fact as to his *prima facie* case of discrimination, retaliation, and harassment. Mr. Grady has filed exhibits (*see* [Filing No. 50](#)) to accompany his response to Xerox's Motion for Summary Judgment; however, he does not cite to the portions of the record to satisfy his burden of showing that there are questions of material fact requiring trial, or how these exhibits support his claims. *See* [Filing No. 49](#). Xerox complied with Local Rule 56-1(k) by providing Mr. Grady with a notice that he had the right to respond to the Motion for Summary Judgment and present evidence in support of his case, and informing him that he was required to comply with the requirements of Federal Rule of Civil Procedure 56 and Local Rule 56-1. ([Filing No. 44](#).) Copies of these rules were also provided to Mr. Grady along with the required notice.

Mr. Grady's response primarily consists of rhetorical arguments and questions with little citation to the record in support of his claims. While the Court may give the benefit of the doubt to *pro se* litigants, they still have an obligation to adhere to the rules and procedures of the Court. "[E]ven though *pro se* litigants do benefit from 'various procedural protections,' they 'are not

entitled to a general dispensation from the rules of procedure. . . .'" *Black v. Rieth-Riley Const. Co.*, 957 F. Supp. 177, 180 (S.D. Ind. 1997) (quoting *Jones v. Phipps*, 39 F.3d 158, 163 (7th Cir. 1994)). "Although the pleadings of *pro se* litigants are construed liberally, there is no lower standard when it comes to rules of evidence and procedure." *Powers v. Runyon*, 974 F. Supp. 693, 696 (S.D. Ind. 1997) (citing *Jones*, 39 F.3d at 163). Mr. Grady still bears the affirmative burden of presenting evidence that a disputed issue of material fact exists. *Black*, 957 F. Supp. at 180.

1.  **Discrimination Claim**

Turning to the substance of the parties' arguments and supporting evidence, Mr. Grady's discrimination claim fails because he cannot show that he was meeting Xerox's legitimate employment expectations, nor that similarly situated employees were treated more favorably than he was. "[W]hen a district court evaluates the question of whether an employee was meeting an employer's legitimate employment expectations, the issue is not the employee's past performance but 'whether the employee was performing well at the time of his termination.'" *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 329 (7th Cir. 2002) (quoting *Karazanos v. Navistar Intern. Transp. Corp.*, 948 F.2d 332, 336 (7th Cir. 1991)). Xerox asserts that Mr. Grady was not meeting its legitimate employment expectations because, at the time of his termination, he had received a final written warning for sleeping on the job, failed to document two separate calls, and did not follow proper procedures for taking calls from Spanish-speaking applicants. Mr. Grady does not deny these facts, nor does he provide any evidence that they are false. Instead, he responds to this argument with a series of questions, presumably to cast doubt on the veracity of Xerox's factual assertions. *See* Filing No. 49, at ECF pp. 19-20. However, the means by which to raise a question of fact is not by questioning the movant's facts or arguments, but rather by citing to evidence demonstrating there are factual disputes precluding summary judgment. Fed. R. Civ. P. 56(c)(1)

9

("A party asserting that a fact cannot be or is genuinely disputed *must* support the assertion by . . . citing to particular parts of materials in the record . . . .") (emphasis added); S.D. Ind. L.R. 56-1(b) ("A party opposing a summary judgment motion *must* . . . file and serve a response brief and any evidence (that is not already in the record) that the party relies on to oppose the motion.") (emphasis added). The time for asking such questions was during the discovery process, not in response to a motion for summary judgment.[2]

Even where an employee is terminated for performance issues, he may still prove discrimination by showing that similarly situated employees with similar shortcomings were not subjected to the same adverse employment actions. An employee is similarly situated if the employee is comparable to the plaintiff in all material respects. *Warren v. Solo Cup Co.*, 516 F.3d 627, 630-31 (7th Cir. 2008). "In the usual case a plaintiff must at least show that the comparators (1) 'dealt with the same supervisor,' (2) 'were subject to the same standards,' and (3) 'engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them.'" *Coleman v. Donahoe*, 667 F.3d 835, 847 (7th Cir. 2012) (quoting *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 690 (7th Cir. 2008) (internal citations omitted)). Xerox argues that Mr. Grady has not identified any other employee who engaged in similar conduct who was treated more favorably. Again, Mr. Grady does not respond with any evidence that would support the contention that the only other employee mentioned, Louis Habenstabt, engaged in similar conduct as Mr. Grady, but was subjected to lesser discipline. Therefore, the Court concludes that Mr. Grady has not shown that he can satisfy all of the elements

---

[2] Mr. Grady's repeated argument implying that Xerox wrongfully withheld documents and "gain[ed] access to private email" such that they knew of his "gameplan" is not a valid argument. On the contrary, "[t]he obvious purpose of discovery is to determine the opinions and positions of the opposition's witnesses and prepare for cross-examination." *Griffin v. Foley*, 542 F.3d 209, 221 (7th Cir. 2008). Litigation is not conducted using surprise tactics and gamesmanship. If Mr. Grady believed Xerox withheld relevant materials, the proper procedure would have been to file a motion to compel under Federal Rule of Civil Procedure 37, just as Xerox did. *See* Filing No. 22.

of his *prima facie* case of disparate treatment discrimination, and Xerox is entitled to summary judgment on this claim.

## 2. Retaliation Claim

Mr. Grady has also not shown that he can satisfy the requirements for proving his retaliation claim. A plaintiff may establish a *prima facie* case of retaliation using either the direct or indirect method. *Stone v. City of Indianapolis Pub. Util. Div.*, 281 F.3d 640, 642 (7th Cir. 2002). Under the direct method, the plaintiff must present direct or a "convincing mosaic" of circumstantial evidence of: (1) a statutorily protected activity; (2) an adverse action taken by the employer; and (3) a causal connection between the two. *Id.* at 644. Under the indirect, burden-shifting approach, Mr. Grady may establish a *prima facie* case of retaliation by showing that: (1) he engaged in a statutorily protected activity; (2) he met his employer's legitimate expectations, *i.e.*, he was performing his job satisfactorily; (3) he suffered a materially adverse action; and (4) he was treated less favorably than some similarly situated employee who did not engage in the statutorily protected activity. *Harper v. C.R. England, Inc.*, 687 F.3d 297, 309 (7th Cir. 2012).

Mr. Grady has not presented any direct evidence or a "convincing mosaic" of circumstantial evidence to support his claim, so the Court will analyze his retaliation claim under the indirect method. As previously discussed, Mr. Grady has not shown that he was meeting Xerox's legitimate employment expectations, nor that any other similarly situated employee was treated more favorably. In addition, the undisputed facts show that Mr. Grady did not engage in a statutorily protected activity. Mr. Grady admitted in his deposition that the email sent to Mr. Trice with complaints about harassment by Ms. Akers did not indicate that he was being harassed on the basis of his race, asserting that he did not have to make such a claim. Grady Dep. 207:2-13 (Filing No. 42-8, at ECF p. 45). However, that is precisely what is required under the law.

11

> Although filing an official complaint with an employer may constitute statutorily protected activity under Title VII, the complaint must indicate the discrimination occurred because of sex, race, national origin, or some other protected class. . . . *Merely complaining in general terms of discrimination or harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient*.

*Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006) (citing *Gleason v. Mesirow Fin., Inc.,* 118 F.3d 1134, 1147 (7th Cir. 1997) (emphasis added). Because Mr. Grady admitted that his complaint to Mr. Trice consisted of a "generic e-mail to management" that did not indicate that he believed he was being harassed based upon his race, he did not engage in activity protected under Title VII. Because Mr. Grady cannot satisfy all of the elements of his *prima facie* case, the Court finds that Xerox is entitled to summary judgment on Mr. Grady's retaliation claim.

### 3. Harassment claim

In his Complaint, Mr. Grady alleges that he was subjected to harassing and intimidating acts as well as racially derogatory words, phrases, and epithets such as "Mack" and that he emailed Mr. Trice and the Human Resources department "to bring to light the harassing, bullying, and discriminatory behavior." (Filing No. 1 at ECF p. 2.) However, as mentioned earlier, the email does not mention race and does not allege harassment based on race. Mr. Grady has provided no meaningful response to Xerox's assertion that he was not subjected to harassment on the basis of his race. In his response to summary judgment, Mr. Grady fails to point to evidence which supports his harassment claim. Rather, he merely repeats his statement regarding his belief that discovery was inadequate or improper, which has already been addressed by the Court. Because Mr. Grady has not presented any facts, argument, or evidence to dispute Xerox's argument, the Court must accept Xerox's facts as true and finds that Mr. Grady's harassment claim has been forfeited. *See* Fed. R. Civ. P. 56(e) ("If a party . . . fails to properly address another party's assertion of fact as

required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."); *Koszola v. Bd. of Educ. of City of Chi.*, 385 F.3d 1104, 1111 (7th Cir. 2004) ("As we have often stated, summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events.") (internal quotations omitted); *Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 407 (7th Cir. 2007) *aff'd,* 553 U.S. 442 (2008) (Plaintiff forfeited his discrimination claim by devoting only a skeletal argument in response to defendant's motion for summary judgment). Thus, the Court concludes that Xerox is entitled to summary judgment on Mr. Grady's harassment claim.

## IV. CONCLUSION

For the reasons set forth above, the Court finds that Mr. Grady has not met his burden of presenting evidence showing that there is a genuine dispute of material fact on his discrimination, retaliation, and harassment claims warranting trial. Therefore, Xerox's Motion for Summary Judgment ([Filing No. 42](#)) is **GRANTED**, and Mr. Grady's claims are **DISMISSED with prejudice**.

**SO ORDERED.**

Date: 3/4/2015

*[signature]*

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Russell D. Grady
3078 Baltimore Terrace
Indianapolis, Indiana  46218

Tasha Rebecca Roberts
ROBERTS AND BISHOP
troberts@roberts-bishop.com

David D. Robinson
SCOPELITIS GARVIN LIGHT & HANSON
drobinson@scopelitis.com

F. Daniel Wood, Jr.
THE KULLMAN FIRM
fdw@kullmanlaw.com